1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARILYN DILLARD, et al.,

11              Plaintiffs,                  No. 2:08-cv-01339 KJM[1] KJN PS

12        v.

13   VICTORIA M. MORTON
     ENTERPRISES, INC., et al.,
14
                Defendants.
15   _____

16
     RUTH GALTIERI-CARLSON, et al.,
17
                Plaintiffs,                  No. 2:08-cv-01777 KJM KJN PS
18
          v.
19
     VICTORIA M. MORTON
20   ENTERPRISES, INC., et al.,

21              Defendants.                  FINDINGS AND RECOMMENDATIONS

22   _____/

23   _____

24        [1] United States District Judge Kimberly J. Mueller was recently assigned as the district
     judge presiding over these related actions.  (See Order of Reassignment, Feb. 3, 2011, Dillard, et
25   al. v. Victoria M. Morton Enterprises, Inc., et al., No. 2:08-cv-1339 KJM KJN PS, Dkt. No. 63;
     Order of Reassignment, Jan. 21, 2011, Galtieri-Carlson, et al. v. Victoria M. Morton Enterprises,
26   Inc., et al., No. 2:08-cv-1777 KJM KJN PS, Dkt. No. 49.)

                                        1

Presently before the court is a "Motion to Strike Defendants' Answer and Continued Application for Default Judgment," which was filed by plaintiffs in both above-captioned actions.[2] (<u>Dillard, et al. v. Victoria M. Morton Enterprises, Inc., et al.</u>, No. 2:08-cv-1339 KJM KJN PS ("<u>Dillard</u>"), Dkt. No. 54; <u>Galtieri-Carlson, et al. v. Victoria M. Morton Enterprises, Inc., et al.</u>, No. 2:08-cv-1777 KJM KJN PS ("<u>Galtieri-Carlson</u>"), Dkt. No. 40.)  As discussed below, the undersigned previously denied applications for default judgment in both cases because of deficiencies largely related to the damages sought, but the denials were without prejudice.  (Order, Apr. 23, 2010, <u>Dillard</u>, Dkt. No. 51; Order, Apr. 23, 2010, <u>Galtieri-Carlson</u>, Dkt. No. 36.)  The plaintiffs' respective continued applications for default judgment remain before the court, and are the subject of these proposed findings and recommendations.[3]  At this point in the proceedings, each set of plaintiffs seeks a default judgment against the same set of defendants—defendants Victoria M. Morton Enterprises, Inc., Suddenly Slender, and Suddenly Slender International—and seeks an award of $2 million dollars as to each named plaintiff in each action.[4]

---

[2]  These actions are related, but not consolidated.

[3]  The undersigned resolved plaintiffs' motions to strike in a previously entered order. (Order, Aug. 26, 2010, <u>Dillard</u>, Dkt. No. 59; Order, Aug. 26, 2010, <u>Galtieri-Carlson</u>, Dkt. No. 45.)

[4]  Victoria M. Morton, who was previously named as an individual defendant in both actions, was dismissed from both actions without prejudice.  (Order, June 29, 2010, <u>Dillard</u>, Dkt. No. 56; Order, June 29, 2010, <u>Galtieri-Carlson</u>, Dkt. No. 42.)  Morton is not the subject of the continued applications for default judgment.  In regards to the <u>Galtieri-Carlson</u> matter, the only remaining defendants are those identified above.  As to the <u>Dillard</u> matter, the following, remaining defendants were previously dismissed by stipulation of the parties: Personal Beauty Unlimited, Inc., Research Foundation for Biochemistry and Nutrition Corp., and Hot Ticket Enterprises, Inc.  (Order, Aug. 12, 2008, Dkt. No. 10.)  Additionally, the <u>Dillard</u> plaintiffs have clarified that they do not intend to proceed against defendant Pyramid Consulting and Investment Co., and are not seeking a default judgment against that defendant.  (<u>See</u> Aff. of R. Parker White in Supp. of Application for Default J. ¶ 3, <u>Dillard</u>, Dkt. No. 54, Doc. No. 54-2 ("Defendant PYRAMID CONSULTING AND INVESTMENT CO., is no longer included as a defendant in this matter.  They [*sic*] were included in the initial moving papers due to a clerical oversight. Accordingly, Plaintiffs do not request default judgment against Defendant PYRAMID CONSULTING AND INVESTMENT CO.").)

On September 29, 2010, the undersigned conducted a "prove-up" hearing in both cases regarding the plaintiffs' respective claims for damages.  Attorneys R. Parker White, Jeffrey D. Fulton, and William L. Brelsford, Jr. appeared on behalf of all of the plaintiffs.  None of the defendants or their representatives appeared at the prove-up hearing.

In regards to the <u>Dillard</u> matter, plaintiffs Marilyn Dillard and Stephen Dillard testified at the prove-up hearing, and Marilyn Dillard also testified on behalf of two minor plaintiffs, Ciera and Ariel Dillard, who are the children of Marilyn and Stephen Dillard.[5]  As to the <u>Galtieri-Carlson</u> matter, plaintiffs Ruth Galtieri-Carlson and Deana Galtieri testified, and Deana Galtieri also testified on behalf of minor plaintiff Christian Galtieri-Brown, who is Deana Galtieri's son.[6]  Although given repeated opportunities to submit documentary evidence in support of their claims for damages, none of the plaintiffs did so and, instead, plaintiffs in both actions seek only general damages in reliance on the testimony provided at the prove-up hearing and the previously filed declarations of the plaintiffs.

The undersigned has considered the briefs, oral arguments of counsel, testimony provided at the prove-up hearing, and the record in this case and, for the reasons stated below, recommends that plaintiffs' applications for default judgment in both the <u>Dillard</u> and <u>Galtieri-Carlson</u> matters be granted.  The undersigned recommends an award of general damages to each plaintiff as discussed below.

I.    <u>BACKGROUND</u>

Both of these products liability actions involve, as a general matter, personal injuries allegedly suffered by plaintiffs as a result of their exposure to the same "body wrap" products designed, manufactured, distributed, and/or licensed by defendants in each action.  In a previously entered, 30-page order denying the initial application for default judgment filed by

---

[5]  Elaine Garcia is the guardian ad litem for minor plaintiffs Ciera and Ariel Dillard. Neither Ms. Garcia nor the minor plaintiffs were present in the courtroom.

[6]  Deana Galtieri is the guardian ad litem for Christian Galtieri-Brown.

1    plaintiffs, the undersigned recounted in detail the allegations in the operative complaints in each

2    action and the procedural histories of these cases.  For the sake of brevity, that April 23, 2010

3    order is incorporated here by reference.  (See Order, Apr. 23, 2010, Dillard, Dkt. No. 51; Order,

4    Apr. 23, 2010, Galtieri-Carlson, Dkt. No. 36.)

5              Briefly stated, plaintiffs in the above-captioned actions, which are related but

6    unconsolidated, jointly applied for entry of default judgment against various defendants who at

7    one point in the litigation appeared but ceased defending themselves in the litigation.  On

8    April 23, 2010, the undersigned denied plaintiffs' joint application due to several deficiencies

9    contained therein.  (Order, Apr. 23, 2010, Dillard, Dkt. No. 51; Order, Apr. 23, 2010, Galtieri-

10   Carlson, Dkt. No. 36.)  Although the undersigned concluded that the entry of default judgments

11   in both cases was likely warranted under the relevant legal standards, plaintiffs' imprecise and

12   expedient application for default judgment was deficient in several respects, mostly related to the

13   legal and factual basis for the damages award sought.[7]  The undersigned denied plaintiffs' joint

14   application for default judgment without prejudice and provided plaintiffs in both actions 60 days

15   to, among other things, "file supplemental materials, including supplemental declarations and a

16   memorandum of points and authorities, legally and factually substantiating a precise request for

17   damages on behalf of each of the plaintiffs . . . and addressing the court's substantive concerns."

18   (See Order, Apr. 23, 2010, at 29, Dillard, Dkt. No. 51; accord Order, Apr. 23, 2010, at 30,

19   Galtieri-Carlson, Dkt. No. 36.)

20             In response to the court's April 23, 2010 order, plaintiffs in both actions filed the

21   identical pending "Continued Application for Default Judgment" and a related declaration of R.

22   Parker White in support ("White Declaration").  Rather than address the court's detailed

23

24        [7]  Although plaintiffs initially sought a collective award of $2 million dollars on behalf of
     all plaintiffs in *both* actions, *each* plaintiff in *each* case now seeks $2 million dollars in general
25   damages.  (Compare Application for Default J. By Court ¶ 4, Dillard, Dkt. No. 44, with Aff. of
     R. Parker White in Supp. of Application for Default J. ¶ 2, Dillard, Dkt. No. 54, Doc. No. 54-2,
26   and Galtieri-Carlson, Dkt. No. 40, Doc. No. 40-2.)

                                                  4

concerns regarding, among others, the legal and factual basis for plaintiffs' respective requests

for damages in each case, the White Declaration simply states, in relevant part:

> 2. In response to the Court's order dated April 23, 2010, Plaintiffs request a default judgment in the amount of $2,000,000.00 each, based on the papers already submitted before the Court. Additionally, Plaintiffs request a prove-up hearing and will submit to examination before the Court and *will submit medical records* already obtained on behalf of Plaintiffs. At this stage of the litigation, because Defendants have failed to participate in discovery, Plaintiffs cannot justify the expense of submitting experts before the Court in support of Plaintiffs request for default judgments against Defendants.

(White Decl. ¶ 2, Dillard, Dkt. No. 54, Doc. No. 54-2, and Galtieri-Carlson, Dkt. No. 40, Doc.

No. 40-2) (emphasis added.)[8]

The undersigned granted plaintiffs' request for a "prove-up hearing" in each case,

and subsequently conducted that hearing on September 29, 2010. In granting the prove-up

hearing, the undersigned stated:

> The undersigned will grant plaintiffs' request for a "prove-up hearing" in each case, and will specially set that hearing. However, the undersigned notes that plaintiffs' counsel's generalized one-paragraph response to the court's 30-page order, which highlighted serious and specific concerns about the viability of plaintiffs' entitlement to damages in each case, is troubling. It illustrates plaintiffs' counsel's unwillingness to invest the time and effort required to legally and factually substantiate plaintiffs' collective claim for . . . damages. For example, a prove-up hearing, as opposed to an organized and detailed memorandum of points and authorities supported by declarations and documentary evidence, will not provide the court with plaintiffs' precise request for damages and the legal basis for the award of specific categories or types of damages. It appears plaintiffs' counsel would prefer to simply submit testimony and evidence to the court and leave it to the court to determine the legal basis for the damages sought and the amount of damages. Plaintiffs are entitled to take their chances with this less-than-ideal approach, which is the same approach that led to the court's initial denial of plaintiffs' deficient application for default judgment. Nevertheless, although the court will grant plaintiffs in both cases their requested prove-up hearing, it will permit plaintiffs in each case to submit memoranda points and authorities and supporting declarations, as discussed in the court's April 23, 2010 orders, prior to the prove-up hearing.

---

[8] As noted below, however, both before and at the evidentiary hearing the plaintiff declined to submit any of plaintiffs' medical records or documentation.

1  (Order, July 27, 2010, at 3-4 (footnote omitted), <u>Dillard</u>, Dkt. No. 57; Order, July 21, 2010, at 3-4

2  (footnote omitted), <u>Galtieri-Carlson</u>, Dkt. No. 43.)  Although the court provided plaintiffs with

3  repeated opportunities to file memoranda of points and authorities in support of their damages

4  requests and to submit medical records in advance of the prove-up hearing, none of the plaintiffs

5  submitted memoranda or documentary evidence substantiating the damages sought, except for

6  redundant declarations of plaintiffs that the undersigned already found to be of only limited

7  assistance as to damages.

8          At the prove-up hearing, the undersigned raised an additional concern regarding

9  whether plaintiffs had adequately established through their pleadings that plaintiffs' exposure to

10 the body wrap products caused the injuries allegedly suffered by plaintiffs.  The undersigned

11 provided plaintiffs with an opportunity to submit supplemental briefs as to this issue, and

12 plaintiffs in both cases did so.  (Suppl. Br. In Supp. of Pls.' Application for Default J. By Court,

13 <u>Dillard</u>, Dkt. No. 62; Suppl. Br. In Supp. of Pls.' Application for Default J. By Court, <u>Galtieri-

14 Carlson</u>, Dkt. No. 48.)  Plaintiffs' counsel made clear at the prove-up hearing and in the most-

15 recent supplemental briefing that "[e]ach plaintiff's individual request for judgment in the

16 amount of $2,000,000 is based on general damages as a result of the physical and emotional

17 harms each Plaintiff has suffered due to exposure to [defendants'] products."  (<u>Id</u>.)

18 II.     <u>LEGAL STANDARDS</u>

19          Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

20 party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

21 defend against the action.  <u>See</u> Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

22 automatically entitle the plaintiff to a court-ordered judgment." <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>,

23 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing <u>Draper v. Coombs</u>, 792 F.2d 915, 924-25

24 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

25 within the district court's sound discretion.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir.

26 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages.  Geddes, 559 F.2d at 560 (stating that although a default established liability, it did not establish the extent of the damages); cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

III.   DISCUSSION

A.   The Entry of Default Judgment is Appropriate In Both Cases

In the order entered April 23, 2010, the undersigned evaluated plaintiffs'

applications for default judgment under the factors set forth in <u>Eitel</u>.  (<u>See</u> Order, Apr. 23, 2010,

at 13-27, <u>Dillard</u>, Dkt. No. 51; Order, Apr. 23, 2010, at 13-27, <u>Galtieri-Carlson</u>, Dkt. No. 36.)

The undersigned concluded that plaintiffs in each case were entitled to a default judgment, but

that issues pertaining to damages and other procedural issues were so poorly presented in the

moving papers that default judgments could not be entered at that time.  Insofar as the <u>Eitel</u>

factors are concerned, the undersigned concluded that all but one of the factors favored the entry

of default judgments.  However, the undersigned raised two points of concern as to the <u>Eitel</u>

factors that are further addressed below.

First, as to the fourth <u>Eitel</u> factor, which considers the amount of money at stake

in relation to the seriousness of defendants' conduct, the undersigned concluded that the lack of

clarity in regards to plaintiffs' request for damages precluded proper evaluation of the fourth

factor.  (<u>See</u> Order, Apr. 23, 2010, at 23-24, <u>Dillard</u>, Dkt. No. 51; Order, Apr. 23, 2010, at 23-24,

<u>Galtieri-Carlson</u>, Dkt. No. 36.)  However, since the entry of that order, plaintiffs have clarified

that each plaintiff seeks two million dollars in general damages.  Given the seriousness of the

conduct alleged by plaintiffs, the undersigned concludes that the fourth <u>Eitel</u> factor favors the

grant of default judgments in both cases.  Whether each plaintiff is entitled to $2 million dollars

in general damages is an entirely different question, which is addressed below.

Second, the undersigned expressed concern in the April 23, 2010 order in regards

to the fifth <u>Eitel</u> factor, which inquires into the possibility of a dispute concerning material facts,

because the defaulting defendants had filed answers in both actions prior to having a clerk's

default entered against them.[9]  (<u>See</u> Order, Apr. 23, 2010, at 24-25, <u>Dillard</u>, Dkt. No. 51; Order,

Apr. 23, 2010, at 24-25, <u>Galtieri-Carlson</u>, Dkt. No. 36.)  This peculiar circumstance arose

because the defaulting corporate defendants initially appeared in this action and filed an answer

through counsel, but later defaulted after their counsel withdrew from the representation and left

_____

[9]  Nevertheless, the undersigned concluded in that order that the fifth <u>Eitel</u> factor still
favored entering default judgments for the reasons stated therein.

1   the corporate defendants unable to appear in this court.  In any event, the undersigned's concerns

2   regarding potentially disputed materials facts have been alleviated because, on August 26, 2010,

3   the court granted plaintiffs' motions to strike the answers at issue.  (Order, Aug. 26, 2010,

4   Dillard, Dkt. No. 59; Order, Aug. 26, 2010, Galtieri-Carlson, Dkt. No. 45.)  Accordingly, the

5   fifth Eitel factor favors entering default judgments in both cases.

6           As noted above, the undersigned raised an additional concern at the prove-up

7   hearing regarding whether plaintiffs had adequately established that plaintiffs' exposure to

8   defendants' products proximately caused each plaintiff's extensive list of alleged ailments.  In

9   this case, the operative complaints and declarations submitted on each plaintiff's behalf allege

10  that exposure to defendants' products caused plaintiffs injuries ranging from memory loss, to a

11  miscarriage, and numerous other physical and emotional maladies.  Yet, plaintiffs have provided

12  no evidence of a direct link between the products at issue and the symptoms allegedly experience

13  by plaintiffs—indeed, plaintiff were unable to testify at the prove-up hearing that any medical

14  professional opined that any or all of the alleged injuries were necessarily caused by exposure to

15  defendants' products and were not caused by some other source.[10]

16          Although many of plaintiffs' allegations of injury seem inherently implausible

17  and, to say the least, give the undersigned pause, plaintiffs properly refer the court to the Second

18  Circuit Court of Appeals's decision in Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Group,

19  973 F.2d 155 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993) ("Greyhound"), which addresses

20  the causation issue at hand.

21          In Greyhound, a commercial tenant of a warehouse property suffered financial

22  injury as a result of a warehouse fire and sued its landlord for negligent maintenance of the

23  warehouse's fire sprinkler system.  Briefly stated, the landlord defaulted, and the district court

24

25      [10]  Similarly, at the evidentiary hearing, plaintiffs' counsel indicated that they had some
    information that the defendants' products consisted primarily of epsom salts or magnesium
    which allegedly can cause symptoms similar to those experienced by plaintiffs, but counsel
26  declined to provide any of that information or documentation to the court.

subsequently conducted a hearing on the question of damages.  At a hearing regarding damages, the landlord sought to introduce evidence of the tenant's comparative fault and a resulting set-off of damages, but the district court denied that request.  The Court of Appeals affirmed the district court's decision.  On appeal, the landlord argued that the tenant was obligated to show that the landlord's actions were the proximate cause of the damages claimed by the tenant.  Albeit over one judge's vigorous dissent, the panel rejected the landlord's argument insofar as the issue of liability was concerned because requiring the tenant to prove proximate cause would undermine the principal pertaining to default judgments that well-pled allegations are taken as true except as they pertain to the amount of damages.  The Court of Appeals reasoned:

> There is a categorical distinction between the element "proximate cause," as it pertains to the assignment of liability in the first instance, and "proximate cause" as it relates to the ministerial calculation of damages in the context of a default judgment.  With regard to liability, the concept of proximate cause supplies the legal nexus between act and injury, and provides a necessary basis for awarding compensation.  Where it is properly alleged in a complaint, proximate cause—going to liability—is completely and irrefutably established upon the defendant's default.

Id. at 159.  Although it does not appear that the Ninth Circuit Court of Appeals has expressly addressed the issue presented in Greyhound, several district courts in California have cited Greyhound for the proposition that where proximate cause is properly alleged in the complaint, proximate cause is established for the purpose of evaluating liability, and a plaintiff must only prove that the compensation sought relates to the damages that naturally flow from the injuries pled.  See, e.g., Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) ("If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled.") (citation omitted, emphasis added); accord Lehman Brothers Hldgs., Inc. v. Home Capital Funding, No. 09cv859 WQH (BLM), 2010 WL 1904871, at *2 (S.D. Cal. May 12, 2010) (unpublished) (same); Elektra Entmt. Group, Inc. v. Bryant, No. CV 03-6381GAF(JTLX), 2004 WL 783123, at *2 (C.D. Cal. Feb. 13, 2004)

1   (unpublished) (same).  On the basis of these cases, the undersigned concludes that plaintiffs'

2   respective operative complaints adequately establish proximate cause with respect to liability.

3   The extent of damages that plaintiffs are entitled to, which depends on the evidence submitted by

4   plaintiffs, is a separate question addressed below.

5          For the reasons stated above and in the April 23, 2010 order, the undersigned

6   recommends that default judgments be entered in the <u>Dillard</u> and <u>Galtieri-Carlson</u> actions,

7   respectively, jointly and severally against defendants Victoria M. Morton Enterprises, Inc.,

8   Suddenly Slender, and Suddenly Slender International.  The undersigned next addresses the

9   amount of the judgment to be awarded.

10         B.     The Measure of General Damages

11         In connection with their continued applications for default judgments, plaintiffs

12  seek an award of "general damages" in the amount of $2 million dollars as to each plaintiff in

13  each case.  As noted above, plaintiffs rely only on their previously submitted declarations and the

14  testimony of some of the plaintiffs at the prove-up hearing as support for the damages sought.

15  Plaintiffs declined to present any documentation that might inform the extent of the alleged

16  injuries suffered, such as medical records or billing statements, and offered no expert testimony

17  or testimony of treating physicians in support of their estimate of damages.  Moreover, plaintiffs

18  have filed no memoranda of points and authorities justifying an award of "general damages" or

19  identifying categories of damages that inform the calculation of such general damages.

20  Similarly, plaintiffs offer no justification for seeking the same amount of general damages on

21  behalf of every single plaintiff, despite the fact that the degree of injury alleged by each plaintiff

22  varies widely.  In short, plaintiffs appear to have selected the damages figure of $2 million

23  dollars per plaintiff out of thin air.

24         Under California law, which applies in this diversity jurisdiction case, the

25  measure of damages in a tort action is "the amount which will compensate for all the detriment

26  proximately caused thereby, whether it could have been anticipated or not."  Cal. Civ. Code

11

1   § 3333.  General damages may be generally categorized as "those losses which naturally flow

2   from the injury and which are not quantifiable by reference to bills or receipts."  See Beeman v.

3   Burling, 216 Cal. App. 3d 1586, 1600, 265 Cal. Rptr. 719, 727 (Ct. App. 1990).  General

4   damages generally consist damages for, among other things, emotional distress or mental

5   anguish, pain and suffering, and loss of earning power.  See id. (stating that "damages for pain,

6   suffering and emotional distress are paradigmatic examples of general damages."); Connoly v.

7   Pre-Mixed Concrete Co., 49 Cal.2d 483, 489, 319 P.2d 343, 346 (Cal. 1957) ("Loss of earning

8   power is an element of general damages which can be inferred from the nature of the injury,

9   without proof of actual earnings or income either before or after the injury.").  As noted by one

10  district judge in the context of a bench trial, the amount of general damages awarded for items

11  such as pain and suffering "depends to a great extent on the trial court's observation of the

12  plaintiff and its subjective determination of the amount needed to achieve full compensation."

13  See KDME, Inc. v. Bucci, No. 05CV199 IEG (AJB), 2008 WL 205261, at *7 (S.D. Cal. Jan. 24,

14  2008) (unpublished) (citing Hyde v. Chevron U.S.A., Inc., 697 F.2d 614, 632 (5th Cir. 1983)).

15          The undersigned heard several hours of testimony at the prove-up hearing.  As

16  noted above, in the Dillard matter, plaintiffs Marilyn Dillard and Stephen Dillard testified, and

17  Marilyn Dillard also testified on behalf of the minor plaintiffs, Ciera and Ariel Dillard.  In the

18  Galtieri-Carlson matter, plaintiffs Ruth Galtieri-Carlson and Deana Galtieri testified, and Deana

19  Galtieri also testified on behalf of minor plaintiff Christian Galtieri-Brown.

20          After considering these plaintiffs' testimony in the respective actions, the

21  undersigned concludes that none of the plaintiffs is entitled to an unsupported demand for $2

22  million dollars in general damages.  The testimony and declarations provided simply do not

23  establish each plaintiff's entitlement to an award of $2 million dollars in general damages.

24  However, the undersigned concludes that plaintiffs are entitled to some measure of general

25  damages—the only type of damages sought by plaintiffs—as a result of the injuries about which

26  they testified.  Therefore, although plaintiffs have not established through expert testimony or

12

1  medical records that exposure to the defendants' products caused all of their symptoms, they

2  have established that they suffered emotional distress and anguish which entitles them to general

3  damages.

1.  Marilyn Dillard

5  Of the Dillard plaintiffs, Marilyn Dillard testified to the greatest exposure to

6  defendants' products and the most severe symptoms or injuries resulting from exposure.

7  Marilyn Dillard, who was previously a school teacher, became a home business licensee of

8  defendants and sold and applied defendants' products; she was exposed to defendants' products

9  in or around July 2004.  (See Marilyn Dillard Decl. ¶¶ 6-7, Dillard, Dkt. No. 44, Doc. No. 44-3.)

10 She mixed the solutions used in applying the body wraps at issue and even drank a product

11 solution based on a representation of Victoria Morton, a now-dismissed individual defendant,

12 that defendants' product solutions were safe enough to drink.  After performing three body

13 wraps, Marilyn Dillard developed flu-like symptoms.  Marilyn Dillard testified that she

14 subsequently suffered myriad health problems including bronchitis, chronic vaginal yeast

15 infections, joint pain, and a miscarriage in November 2004.  Marilyn Dillard alleges that most of

16 her conditions have not responded to normal courses of treatment and that she continues to suffer

17 from intermittent extreme flu-like symptoms that often last for extended periods of time, extreme

18 chronic yeast infections, menstrual irregularities, and has been diagnosed with chronic fatigue

19 syndrome. All of which medical professionals have been unable to successfully treat.

20 Marilyn Dillard has provided no medical records substantiating causation between

21 her exposure to the products and her symptoms, or substantiating the degree of her symptoms.

22 Nevertheless, the undersigned can assess and recommend an award of general damages.  Taking

23 Marilyn Dillard's declaration and testimony into account, the undersigned recommends that

24 Marilyn Dillard be awarded general damages in the amount of $200,000.

2.  Stephen Dillard

26 Plaintiff Stephen Dillard's testimony reflects that Stephen Dillard was exposed to

13

defendants' products after Marilyn Dillard started her body-wrapping business in the family home, for a period of between six months and two years.  Stephen Dillard was exposed to the products when he would come home from work and assist Marilyn Dillard in mixing the solutions used in the body wrapping process.  Insofar as the symptoms resulting from exposure to defendants' products, Stephen Dillard's declaration and testimony represent that Stephen Dillard has a reduced activity level since exposure, now suffers from Attention Deficit Disorder, that his "head feels cloudy," that he suffers from an inability to focus, concentrate, and remember information, recently suffers from dizziness and balance problems, and that he suffers from chronic and acute flu-like symptoms, chronic skin lesions and sores on his head, and "hypersensitivity."  (See Stephen Dillard Decl. ¶¶ 6, 8, 10, Dillard, Dkt. No. 44, Doc. No. 44-4.)  Although unsubstantiated by any medical evidence, Stephen Dillard testified that these symptoms were caused by his exposure to defendants' products, persist today, and have not been effectively treated by health professionals.  On the basis of Stephen Dillard's declaration and testimony, the undersigned recommends that Stephen Dillard be awarded general damages in the amount of $50,000.

3.     Ariel and Ciera Dillard

The declaration submitted by Marilyn Dillard on behalf of minor plaintiff Ariel Dillard represents that Ariel Dillard was exposed to defendants' products beginning at age six, when Marilyn Dillard started her body-wrapping business in the family home in 2004.  (See Decl. of Marilyn Dillard on Behalf of Ariel Dillard (A Minor) ¶ 2, Dillard, Dkt. No. 44, Doc. No. 44-1.)  That declaration and Marilyn Dillard's testimony on Ariel Dillard's behalf aver that Ariel Dillard has suffered symptoms from her exposure to defendants' products that include chronic and acute flu-like symptoms, memory problems, reduced dexterity, motor skill problems, fatigue, and "hypersensitivity."  (See id. ¶¶ 3-8.)  Of course, plaintiffs have submitted no medical evidence substantiating these symptoms.  Nevertheless, on the basis of the declaration submitted by plaintiffs and Marilyn Dillard's testimony on Ariel Dillard's behalf, the undersigned

1  recommends that Ariel Dillard be awarded general damages in the amount of $50,000.

2       The declaration submitted by Marilyn Dillard on behalf of minor plaintiff Ciera

3  Dillard represents that Ciera Dillard was directly exposed to defendants' products, beginning at

4  age three, when she would assist Marilyn Dillard in preparing the solutions used in connection

5  with the body wraps applied to customers.  (See Decl. of Marilyn Dillard on Behalf of Ciera

6  Dillard (A Minor) ¶ 2, Dillard, Dkt. No. 44, Doc. No. 44-2.)  Marilyn Dillard testified that Ciera

7  Dillard drank some of the defendants' product.  That declaration and Marilyn Dillard's testimony

8  on Ciera Dillard's behalf assert that Ciera Dillard suffered extreme flu-like symptoms, including

9  pneumonia, which ultimately led to an operation on one of Ciera Dillard's lungs.  (See id. ¶¶ 4-

10  6.)  Ciera Dillard presently suffers from breathing difficulties that Marilyn Dillard attributes to

11  early exposure to defendants' products, as well as self-esteem problems arising from scarring

12  suffered as a result of the lung operation.  (Id. ¶¶ 7-8.)  Again, plaintiffs have submitted no

13  medical evidence substantiating these symptoms.  However, in light of the declaration submitted

14  by plaintiffs and Marilyn Dillard's testimony on Ciera Dillard's behalf, the undersigned

15  recommends that Ciera Dillard be awarded general damages in the amount of $100,000.

16            4.    Ruth Galtieri-Carlson

17       As with the Dillard plaintiffs, the Galtieri-Carlson plaintiffs also testified to

18  having suffered myriad adverse medical reactions to defendants' products.  As reflected in the

19  declarations filed by plaintiffs in the Galtieri-Carlson matter and plaintiffs' testimony, plaintiffs

20  Ruth Galtieri-Carlson and Deana Galtieri-Carlson were exposed to defendants' products through

21  their salon business, where they administered defendants' body wrap products as licensees.  (See

22  Decl. of Deana Galtieri ¶¶ 2-3 ("Galtieri Decl."), filed in Dillard, Dkt. No. 44, Doc. No. 44-5;

23  Decl. of Ruth Galtieri-Carlson ¶¶ 2-3 ("Galtieri-Carlson Decl."), filed in Dillard, Dkt. No. 44,

24  Doc. No. 44-7.)

25       Ruth Galtieri-Carlson's declaration and testimony at the prove-up hearing reflect

26  that since her exposure to defendants' products, she has experienced maladies that are too

15

1   voluminous to recount here.  These conditions include flu-like symptoms, chronic fatigue,

2   respiratory issues, severe vertigo resulting in blackouts, Herpes Simplex (I and II), fungal

3   infections, muscle spasms and weakness, rectal burning and itching, anxiety, dizziness, mood

4   disorders, and various other conditions, all of which medical professionals have been unable to

5   treat.  (See Galtieri-Carlson Decl. ¶¶ 5-6.)

6          As with the Dillard plaintiffs, the Galtieri-Carlson plaintiffs have provided no

7   medical records substantiating causation between their exposure to the products and their

8   symptoms, or substantiating the degree of their symptoms.  Nevertheless, the undersigned can

9   assess and recommend an award of general damages.  Taking Ruth Galtieri-Carlson's declaration

10  and testimony into account, the undersigned recommends that Ruth Galtieri-Carlson be awarded

11  general damages in the amount of $125,000.

12         5.    Deana Galtieri

13         Plaintiff Deana Galtieri alleges that as a result of her prolonged exposure to

14  defendants' products at her salon business, she has suffered various conditions, including

15  reduced activity, vertigo, suicidal ideation, chronic vaginal bacterial and yeast infections, extreme

16  flu-like symptoms, throbbing joint pain throughout her body, gastrointestinal issues, lethargy and

17  chronic fatigue, abnormal pap smears, severe cramping and menstrual pain, and various other

18  conditions, including she has been diagnosed with fibromyalgia, epstein-barr, and chronic fatigue

19  syndrome, all of which medical professionals have been unable to treat.  (See Galtieri Decl. ¶¶ 5-

20  6, 9-10.)  Deana Galtieri has submitted no medical records substantiating causation between her

21  exposure to the products and their symptoms, or substantiating the degree of her symptoms.

22  Nevertheless, the undersigned can assess and recommend an award of general damages.  Taking

23  Deana Galtieri's declaration and testimony into account, the undersigned recommends that Deana

24  Galtieri be awarded general damages in the amount of $200,000.

25         6.    Christian Galtieri-Brown

26         The declaration submitted by Deana Galtieri on behalf of her minor son, plaintiff

16

1  Christian Galtieri-Brown, reflects that Christian Galtieri-Brown was exposed to defendants'

2  products as a result of his involvement in the daily activities at Ruth Galtieri-Carlson and Deana

3  Galtieri's salon business.  (See Decl. of Deana Galtieri as Guardian Ad Litem for Christian

4  Galtieri-Brown ¶¶ 7-8, filed in Dillard, Dkt. No. 44, Doc. No. 44-6.)  He was present during the

5  mixture of solutions for the body wraps and even drank some of the solutions based on a

6  representation agents of defendants that defendants' product solutions were safe enough to drink.

7  (See id. ¶¶ 5-6.)  Deana Galtieri's declaration and testimony on behalf of Christian Galtieri-

8  Brown aver that as a result of Christian Galtieri-Brown's exposure to defendants' products, he

9  allegedly suffers from myriad symptoms including, among others, prolonged fevers, bacterial

10 infections, fungal infections, acute respiratory conditions including pneumonia and bronchitis,

11 cognitive impairment, speech problems, memory problems, unexplained rashes, an inability to

12 control his bowels and bladder, and anxiety, all of which medical professionals have been unable

13 to treat.  (See id. ¶¶ 10-15.)  Again, plaintiffs have submitted no medical evidence substantiating

14 these symptoms or the severity of these symptoms.  However, in light of the declaration and

15 testimony provided by Deana Galtieri on Christian Galtieri-Brown's behalf, the undersigned

16 recommends that Christian Galtieri-Brown be awarded general damages in the amount of

17 $75,000.

18 IV.    CONCLUSION

19         For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

20         1.    The application for default judgment filed by plaintiffs in Dillard, et al. v.

21 Victoria M. Morton Enterprises, Inc., et al., No. 2:08-cv-1339 KJM KJN PS (Dkt. Nos. 44, 54)

22 be granted, and that default judgment, imposing joint and several liability, be entered in that case

23 against the following defendants in that matter: Victoria M. Morton Enterprises, Inc., Suddenly

24 Slender, and Suddenly Slender International.

25         2.    That general damages in the amount of $200,000 be awarded to plaintiff

26 Marilyn Dillard.

17

1          3.      That general damages in the amount of $50,000 be awarded to plaintiff

2  Stephen Dillard.

3          4.      That general damages in the amount of $50,000 be awarded to plaintiff

4  Ariel Dillard.

5          5.      That general damages in the amount of $100,000 be awarded to plaintiff

6  Ciera Dillard.

7          6.      The application for default judgment filed by plaintiffs in <u>Galtieri-Carlson,</u>

8  <u>et al. v. Victoria M. Morton Enterprises, Inc., et al.</u>, No. 2:08-cv-1777 KJM KJN PS (Dkt.

9  Nos. 34, 40) be granted, and that default judgment, imposing joint and several liability, be

10  entered in that case against the following defendants in that matter: Victoria M. Morton

11  Enterprises, Inc., Suddenly Slender, and Suddenly Slender International.

12          7.      That general damages in the amount of $125,000 be awarded to plaintiff

13  Ruth Galtieri-Carlson.

14          8.      That general damages in the amount of $200,000 be awarded to plaintiff

15  Deana Galtieri.

16          9.      That general damages in the amount of $75,000 be awarded to plaintiff

17  Christian Galtieri-Brown.

18          10.     The Clerk of Court be directed to close this case.

19          These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  <u>Id.</u>; <u>see</u> <u>also</u> E. Dist. Local Rule 304(b).

23  Such a document should be captioned "Objections to Magistrate Judge's Findings and

24  Recommendations."  Any response to the objections shall be filed with the court and served on

25  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

26  Failure to file objections within the specified time may waive the right to appeal the District

1  Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d

2  1153, 1156-57 (9th Cir. 1991).

3           IT IS SO RECOMMENDED.

4  DATED:  February 3, 2011

5

6

7                              KENDALL J. NEWMAN
                               UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26